**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**RONALDO S. LIGONS,**

Plaintiff,

v.

**MARK KROLL, Lieutenant, and DAVID CRIST, Warden,**

Defendants.

Civil File No. 00-1511 (DSD/JGL)

**REPORT AND RECOMMENDATION**

Ronaldo S. Ligons, pro se.

Jennifer K. Park, Esq., and Mark B. Levinger, Esq., Assistant Minnesota Attorneys General, for Defendants.

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter is before the undersigned Magistrate Judge of District Court on Plaintiff Ronaldo S. Ligons' Second Motion for Summary Judgment and Injunctive Relief (Doc. No. 6)[1]; Plaintiff's Motion for Default Judgment (Doc. No. 14); Defendants' Motion for Summary Judgment (Doc. No. 17); Plaintiff's Third Motion for Summary Judgment (Doc. No. 23); and Defendants' Second Motion for Summary Judgment (Doc. No. 25). This

[1] Plaintiff filed his First Motion for Summary Judgment contemporaneously with his Complaint. The motion was denied without prejudice on June 27, 2000, in accordance with Federal Rule of Civil Procedure 56(a).

(38)

FILED 2-14-01
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

matter has been referred to the undersigned Magistrate Judge for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. BACKGROUND

Plaintiff Ligons is an inmate currently incarcerated at the Minnesota Correctional Facility in Stillwater, Minnesota ("MCF-Stillwater"). Defendant Kroll is in charge of the Property Department at MCF-Stillwater, and Defendant Crist is the Warden at MCF-Stillwater. In the Complaint filed under 42 U.S.C. § 1983, Plaintiff raises two claims. Plaintiff first alleges that mailroom staff at MCF-Stillwater denied him subscription publications while he was confined to the segregation unit for disciplinary infractions ("Count 1"). Second, Plaintiff contends that Defendant Kroll denied Plaintiff a paperback book, which his ex-mother-in-law had bought and which was mailed to him from a bookstore ("Count 2"). As relief, Plaintiff asks the Court to enjoin the prison from denying subscription publications in segregation, to enjoin prison officials from destroying Plaintiff's book and to return Plaintiff's book, and to require a change in policy so that prisoners are allowed to receive books from bookstores. (Compl. at 4.)

With respect to Count 1, Defendants respond that Plaintiff was denied the subscriptions while in segregation in accordance with the prison's

segregation policy at that time.[2] The policy did not permit inmates in the segregation unit to receive magazine subscriptions, but provided that subscriptions would be held in storage, along with other property not permitted in segregation, until the inmate left the segregation area. When Mr. Ligons left the segregation unit, he was given his property including the magazines. As for Count 2, Defendants reply that Plaintiff was denied the book because he had not placed a special order for the book with the prison's Property Department in compliance with the Ordering, Shipping, and Receiving policy at the prison. On the day the book arrived at the prison, Plaintiff was notified that the book would be withheld because he had not requested or received approval for it. Prison officials gave Plaintiff the opportunity to have the book returned to the sender at his expense, but Plaintiff declined, and the book was destroyed. Defendants aver that the Department of Corrections ("DOC") policy requires preapproval for all incoming packages. Furthermore, the DOC has an administrative procedure for inmate claims of property damage, which Plaintiff did not follow, and Defendants argue that Plaintiff has therefore not exhausted

[2] In October 2000, the segregation policy was changed. An inmate is now permitted to have a combination of five books and magazines at any one time in the segregation unit. If a magazine arrives in the mail while an inmate is in the segregation unit, he may choose to have the incoming magazine kept in storage, or receive it and have one of the other five publications put in storage.

his administrative remedies. Defendants deny that Plaintiff's constitutional rights were violated in either incident.

The procedural history of this case is unnecessarily protracted and convoluted. As a result, there are two pending motions for summary judgment by Plaintiff, a pending motion by Plaintiff for default judgment, and two pending motions for summary judgment by Defendants. Plaintiff's second motion for summary judgment and Defendants' first motion for summary judgment were both filed without supporting memoranda of law, and this Court determined in the Pretrial Order of December 7, 2000, that both motions were too legally and factually deficient to render a judgment on the merits. The Court ordered all parties to submit thorough memoranda of law, including affidavits and exhibits, in support of their respective motions by December 22, 2000. Rather than comply with this Court's Order, however, Plaintiff and Defendants each filed another motion for summary judgment, without seeking leave of the Court. Consequently, the Court regards Plaintiff's third motion for summary judgment and Defendants' second motion for summary judgment as memoranda in support of their prior motions. Accordingly, the Court recommends that Plaintiff's third motion for summary judgment and Defendants' second motion for summary judgment be denied as improperly filed in violation of the Pretrial Order.

The two remaining summary judgment motions both relate to the two, relatively concise claims alleged by Plaintiff in his Complaint. Thus, the Court will discuss the two claims rather than address each motion in turn.[3]

## II. DISCUSSION

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The non-moving party may not rest upon the pleadings alone as a response but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). However, the facts are examined in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Additionally, the movant is entitled to summary judgment when the non-movant fails to establish the existence of an essential element of a claim on which that party has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). No genuine issue of material fact exists absent such foundation because "a complete failure of proof concerning an essential

[3] Plaintiff attempts to add claims in documents filed subsequent to his Complaint. (E.g., Pl. Reply Def. Mem. Supp. Mot. Summ. J. at 4.) This Court will address only claims made in the Complaint. A party must comply with the Federal Rules of Civil Procedure to add claims by amending the Complaint.

element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Title 42 U.S.C. § 1983 provides relief to an inmate when a prison official deprives him of rights guaranteed by the Constitution or other federal law. Thus, a § 1983 complaint must allege a particular violation of federal law. See, e.g., City of Oklahoma City v. Tuttle, 471 U.S. 808, 817 n.4 (1985). Section 1983 itself is not a source of substantive rights, but is a means of vindicating federal rights guaranteed elsewhere. See Albright v. Oliver, 510 U.S. 266, 271 (1994) (plurality opinion) (citation omitted). In the present case, Plaintiff Ligons argues that Defendants Kroll and Crist violated his First Amendment rights under the United States Constitution.

### A. Whether Defendants Wrongfully Denied Plaintiff Subscription Publications While He Was in Segregation

The Court first finds that there are no disputed facts. On November 15, 1999, Plaintiff was transferred to a cell in the segregation unit at MCF-Stillwater for disciplinary infractions, and he remained there until November 30, 1999. (Rudeen Aff. ¶ 3.) While Plaintiff was confined to the segregation unit, two magazines arrived in the mail for him, but prison officials did not give him the magazines. Instead, officials held the magazines for Mr. Ligons until he left the segregation unit. The relevant MCF-Stillwater policy in November 1999 was to allow inmates in segregation to have five paperback

books and five law books in their cell, but incoming newspaper and magazine subscriptions were held with the inmate's segregation property until he left the segregation unit. (Craig Aff. ¶ 8 and Ex. 1.) Plaintiff Ligons received the magazines upon returning to the general population.

MCF-Stillwater has changed its segregation policy with respect to incoming publications since November 1999. Defendants submit the change in policy moots Plaintiff's claim. However, the issue is not moot; a change in policy does not cure prior wrongs. Whether the prior policy violated Plaintiff's First Amendment rights is a justiciable controversy, and the Court therefore will analyze the constitutionality of the policy as it existed during the events giving rise to Plaintiff's Complaint.

The First Amendment protects the flow of information to prisoners, including their receipt of the mails. See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989). Prison regulations restricting an inmate's access to publications are constitutionally valid if they are "reasonably related to legitimate penological interests." Id. at 413 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). Prison restrictions on incoming publications should be analyzed under the Turner standard. See id. at 413-414. The Court in Turner established four factors determining whether a prison regulation is reasonably related to a valid penal interest: (1) whether a rational connection exists between the regulation

and a neutral, legitimate government interest; (2) whether alternative means exist for inmates to exercise the constitutional right at issue; (3) what impact the accommodation of the right would have on inmates, prison personnel, and prison resources; and (4) whether obvious, easy alternatives exist. See 482 U.S. at 89-91. Additionally, courts should be mindful to afford deference to decisions of prison officials. See id. at 89.

The first Turner factor includes two distinct inquiries: whether the government's interest is neutral and legitimate, and whether the regulation is rationally related to that interest. See Thornburgh, 490 U.S. at 414. Here, Defendants argue they have a legitimate government interest in prohibiting magazines in the segregation unit. Specifically, Defendants submit that allowing inmates in the segregation unit fewer amenities reinforces positive behavior; restricting and monitoring personal property reduces security risks, limits opportunities for hiding contraband, and facilitates searches of cells; and restricting flammable property reduces the risk of fire, which inmates have learned to start from electrical outlets in their cells. (Craig Aff. ¶¶ 3-6.) The Court finds that the government's interests are legitimate, particularly in maintaining internal order and discipline by making disciplinary segregation unattractive to inmates. See Little v. Norris, 787 F.2d 1241, 1243-44 (8th Cir. 1986) (finding valid a regulation withholding all mail while an inmate was in

disciplinary isolation where the purpose of the restriction was to make punitive isolation unpleasant, to discourage improper behavior, and to promote security within the prison); Gregory v. Auger, 768 F.2d 287, 290 (8th Cir. 1985) (citation omitted) (upholding restrictions on incoming mail for inmates in disciplinary detention); Jackson v. Brookhart, 640 F. Supp. 241, 242-43 (S.D. Iowa 1986) (same). A prison rule is neutral if it restricts First Amendment rights without regard to the content expressed in the publication. See Thornburgh, 490 U.S. at 415 (citation omitted). In this case, the regulation did not restrict publications according to content. The Court therefore concludes that the regulation was both legitimate and neutral.

The Court also finds that the regulation was rationally related to the security and disciplinary interests. It is rational to reinforce positive behavior by restricting the amenities of inmates in disciplinary segregation, to maintain order and discipline by making segregation unattractive to inmates, and to reduce security risks by limiting and monitoring personal property in the segregation unit. See id. at 416-417; Gregory, 768 F.2d at 290; Jackson, 640 F. Supp. at 242-43. In addition, because the segregation unit exists primarily for the purpose of separating inmates convicted in a disciplinary hearing from the general population, inmates in the unit inherently present an increased security risk and require stricter security measures.

Turning to the second Turner factor, the Court finds the alternative means for inmates to exercise their First Amendment rights existed in the part of the regulation allowing inmates paperback books and law books while in segregation. See Thornburgh, 490 U.S. at 418 (reasoning that if other publications were permitted, the second factor is met). In addition, inmates were allowed to have their magazines once they left the segregation unit. Third, the Court finds that the impact of accommodating the right to receive unrestricted publications in the segregation unit would have an adverse and harmful effect on inmates, prison personnel, and prison resources. Permitting unlimited magazines would increase the administrative burden and cost of maintaining a safe atmosphere in the segregation unit, and would frustrate the goal of reinforcing positive behavior.

Finally, with respect to the fourth element, a determinative consideration is whether the restriction was an "exaggerated response" to the prison's concern when a less restrictive alternative exists. See id. at 419 (noting, however, this is not a "least restrictive alternative" test). The Court finds that the restriction was not an exaggerated response to the prison's security and disciplinary concerns. The restriction was imposed in response to legitimate interests, and any alternative would diminish the purpose of the regulation. Furthermore, Plaintiff Ligons has not come forth with an obvious,

easy alternative to the restriction, which is his burden. See id. at 418 (citing Turner, 482 U.S. at 90-91).

In conclusion, MCF-Stillwater's previous segregation unit policy on incoming subscription publications did not violate Plaintiff Ligons' First Amendment rights. There are no genuine issues as to any material facts, and Defendants are entitled to judgment as a matter of law on this claim. Accordingly, this aspect of Defendants' motion for summary judgment should be granted, and this claim should be dismissed with prejudice.

### B. Whether Defendants Wrongfully Destroyed Plaintiff's Book While He Was in Segregation

The Court first finds that there are no disputed facts. On December 27, 1999, a book was mailed to Mr. Ligons at MCF-Stillwater from a Barnes & Noble bookstore. Plaintiff's ex-mother-in-law bought the book and had it shipped to Plaintiff. Plaintiff was notified on December 27 that a book had been received by the Property Department but would be withheld because it was neither ordered nor paid for in accordance with prison regulations. (Kroll Aff. ¶¶ 5-6 and Ex. 2.) The notice explained that the book would be destroyed after thirty days unless Plaintiff directed the Property Department to return it to the sender at Plaintiff's expense. (Id.)

The relevant MCF-Stillwater policy in December 1999 provided a procedure for acquiring items not available in the prison canteen.[4] (Id. ¶ 4 and Ex. 1.) The inmate must submit a special order request form, signed voucher, and addressed envelope to the prison property department, and the department must approve the order in advance. Items received in violation of the above policy are returned to the sender at the inmate's expense or disposed of. (Id.) The policy prohibits inmates from receiving items ordered or paid for by another person. Instead, an inmate must order the item after institution approval and pay for it from his own inmate account, into which a non-inmate may deposit money. (Id. ¶ 5.)

Mr. Ligons did not submit a special order request form for receipt of the book or otherwise receive approval to obtain the book. Furthermore, Plaintiff did not provide authorization for the funds to have the book returned to the sender. The book was destroyed on February 2, 2000.

**1. Exhaustion of Administrative Remedies**

The Court finds that Defendants are entitled to judgment as a matter of law on this claim. First, the Prison Litigation Reform Act ("PLRA"), 42

[4] MCF-Stillwater has changed its mail policy since December 1999. (Def. Reply, Levinger Aff. ¶ 2 and Ex. A.) Defendants mistakenly assert the change in policy moots Plaintiff's claim. However, the Court finds that the constitutionality of the prior policy is a justiciable issue and will examine the policy as it existed in December 1999.

U.S.C. § 1997e(a), requires inmates to exhaust administrative remedies before filing suit. See Chelette v. Harris, 229 F.3d 684, 687 (8th Cir. 2000). The prisoner's subjective beliefs about his available administrative remedies are irrelevant. See id. at 688. Mr. Ligons believes that he exhausted his administrative remedies. (Compl. at 3.) However, it is clear that Mr. Ligons did not provide authorization for the funds to have the book returned to the sender, nor did he file an offender property claim relating to the withholding or destruction of his book in accordance with MCF-Stillwater's Settlement of Claims Policy, No. 106.020. (Compl. at 2; Rudeen Aff. ¶ 4.) Plaintiff did not comply with prison administrative procedures, and "[i]f administrative remedies are available, the prisoner must exhaust them." See Chelette, 229 F.3d at 688. Plaintiff Ligons failed to do so, and consequently, his Complaint should be dismissed without prejudice for failure to exhaust administrative remedies. See id.

### 2. The Merits of Plaintiff's Claim

Even though this Court recommends dismissal based on Plaintiff's failure to exhaust administrative remedies, the Court is compelled to observe that Plaintiff Ligons has raised a cognizable claim regarding the constitutionality of the prison's former policy prohibiting inmates from receiving gift publications even when mailed directly from the vendor. In

Crofton v. Roe, 170 F.3d 957 (9th Cir. 1999), the Ninth Circuit held unconstitutional a prison regulation which prohibited the receipt of any publication unless the prisoner ordered it and paid for it from his own account. See id. at 959. The state failed to show that the prison's ban on publications paid for by another person, even when sent directly from the publisher, was rationally related to a legitimate penal objective. See id. (citing Turner, 482 U.S. at 89.) Employing the analysis set forth in Turner, the Crofton court found the regulation violated the First Amendment. See id. at 960-61. This Court recognizes that Crofton is not precedential authority because it is a Ninth Circuit case. However, the facts and regulation at issue in Crofton are essentially identical to the case at bar, and this Court finds the Crofton analysis and holding notably persuasive.

In the present case, Defendants aver that the reasons for the policies governing receipt of packages are to control the introduction of contraband items into the prison, to ensure that ordered items will be paid for, to ensure that special orders are approved in advance, to conserve staff resources, and to reduce conflicts between staff and inmates over receipt of unauthorized items. (Kroll Aff. ¶¶ 8-9.) Contraband contained in unapproved packages, including books, is of particular concern to prisons. According to

Defendants, the sender can embed concealed or coded messages or apply drugs to the pages which the inmate can ingest by licking the pages. (Id. at ¶ 9.)

Plaintiff Ligons alleges that his First Amendment right to receive mail was violated by the blanket prohibition on receiving gift publications. Application of the four Turner factors determine whether the prison regulation impermissibly infringes on Plaintiff's First Amendment rights. With respect to the first factor, the government's fundamental concern is security.[5] Contraband possibly contained in packages is a legitimate security issue. See Bell v. Wolfish, 441 U.S. 520, 553-55 (1979). In addition, the regulation at issue did not restrict publications according to content and was therefore neutral.

However, the Court is not convinced that the prison's security concern is rationally related to the regulation. Defendants submit that permitting unrestricted access to outside books poses a security risk, and that restricting the source of the books is necessary because people who are not approved vendors would attempt to introduce drugs and messages into the prison. (Def. Mem. Supp. Mot. Summ. J. at 10.) As in Crofton, the government here makes "'no rational distinction between the risk of contraband if an

---

[5] The government's asserted interests in ensuring that ordered items are paid for and that special orders are approved in advance are merely interests in the procedures implementing the challenged regulation.

inmate orders a publication directly from the publisher or if an inmate's family member orders a publication directly from the publisher.'" 170 F.3d at 960 (quoting the district court). Similarly, the government here offers "no justification for the blanket ban on the receipt of all gift publications, nor has it described any particular risk created by prisoners receiving such publications." Id. at 961.

Defendants Kroll and Crist attempt only to justify a ban on receiving books from untrustworthy sources. They provide no reason for banning books mailed directly from approved vendors or publishers. Defendants do not contend that vendors or publishers would attempt to introduce drugs or send messages into the prison. This Court therefore concludes that the prior blanket ban on all gift publications has no rational connection to the prison's security interest, and the regulation therefore violated Plaintiff Ligons' First Amendment rights.

### 3. Plaintiff's Requested Relief

Because Mr. Ligons has not exhausted his administrative remedies, however, he cannot obtain relief for the constitutional wrong in federal court at this time. Furthermore, in his Complaint, Plaintiff asks the Court to enjoin Defendants from destroying or to return the book and for a change in the prison's policy for ordering and receiving property. Under the

PLRA, 18 U.S.C. § 3626(a)(2), a prisoner may seek injunctive relief in § 1983 cases. However, Plaintiff Ligons' request for injunctive relief is moot because the book has been destroyed and the prison's policy has changed. (Def. Mem. Supp. Mot. Summ. J. at 9-10; Kroll Aff. ¶ 7; Levinger Aff. ¶ 2 and Ex. A.)

Plaintiff also asks for monetary damages in his motion for summary judgment: actual damages in the amount of $19.95, which is the replacement cost of the book, and punitive damages. However, Federal Rule of Civil Procedure 7(b)(1) requires the Complaint to "set forth the relief or order sought." Here, Plaintiff Ligons seeks only injunctive relief in his Complaint, and he has not moved to amend his Complaint to include requests for actual or punitive damages. Furthermore, seeking damages in a motion frustrates the purpose of notice pleading and precludes Defendants from arguing relevant defenses such as qualified immunity. Thus, even if Plaintiff was entitled to relief, his request for monetary compensation is procedurally improper and should not be considered.

Finally, because the Court has determined that Plaintiff's claims and the Complaint should be dismissed on various grounds, the Court does not reach the merits of whether Plaintiff is entitled to monetary damages from Defendants.

**C. Plaintiff's Motion for Default Judgment**

Plaintiff Ligons moves for default judgment pursuant to Federal Rule of Civil Procedure 55, asserting that Defendants failed to timely respond to Plaintiff's Complaint. On June 26, 2000, this Court ordered Defendants to file a responsive pleading to Plaintiff's Complaint after service of process was effected. Defendants were served on July 13, 2000. Instead of filing an answer, Defendants filed a motion for a more definite statement on August 24, 2000. On November 16, 2000, this Court denied Defendants' motion for a more definite statement and ordered Defendants to respond to Plaintiff's Complaint by December 6, 2000. On November 17, 2000, Plaintiff filed his motion for default judgment. Defendants timely filed their Answer on December 6, 2000.

Rule 55 provides for entry of a judgment by default "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." Failure to comply with court orders and failure to plead are grounds for default judgment. See Ackra Direct Marketing Corp. v. Fingerhut Corp., 86 F.3d 852, 856 (8th Cir. 1996) (citations omitted). In this case, there is no question that Defendants' motion for a more definite statement, which was filed in lieu of an answer, was not timely filed within the twenty day period prescribed by the Rules. See Fed. R. Civ. P.

12(a)(1)(A), (e). However, Plaintiff did not object to the untimeliness until after this Court had granted an extension of time to Defendants in which to file an answer. While the Court certainly does not condone the dilatory manner in which Defendants' counsel proceeded, the Court finds that default judgment is not appropriate given the extension of time to answer and the disproportionateness of such a remedy at this time. Consequently, Plaintiff's motion for default judgment should be denied.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED**:

(1) Plaintiff Ronaldo S. Ligons' Second Motion for Summary Judgment and Injunctive Relief (Doc. No. 6) should be **DENIED**;

(2) Plaintiff's Motion for Default Judgment (Doc. No. 14) should be **DENIED**;

(3) Defendants' First Motion for Summary Judgment (Doc. No. 17) should be **GRANTED**;

(4) Plaintiff's Third Motion for Summary Judgment (Doc. No. 23) was improperly filed and should be **DENIED**;

(5) Defendants' Second Motion for Summary Judgment (Doc. No. 25) was improperly filed and should be **DENIED**; and

(6) Plaintiff Ronaldo Ligons' Complaint (Doc. No. 1) should be **DISMISSED WITH PREJUDICE** as to Count 1 and **DISMISSED WITHOUT PREJUDICE** as to Count 2.

Dated: February 14, 2001

JONATHAN LEBEDOFF
United States Magistrate Judge

Under Fed. R. Civ. P. 72 and D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by March 5, 2001, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.